UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY ANDRE
HARDVILLE, SR.,

                Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

                Defendant.

_____/

Case No. 5:20-cv-10696
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT OR REMAND (ECF No. 13), GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17),
and AFFIRM THE COMMISSIONER'S DECISION**

**I.   RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment or remand (ECF No. 13), **GRANT** Defendant's cross-motion for

summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's decision.

**II.   REPORT**

      Plaintiff, Timothy Andre Hardville, Sr., brings this action under 42 U.S.C.

§§ 405(g) and/or 1383(c)(3) for review of a final decision of the Commissioner of

Social Security ("Commissioner") denying his application for disability insurance

(DI) benefits.  This matter is before the United States Magistrate Judge for a

Report and Recommendation on Plaintiff's motion for summary judgment or remand (ECF No. 13), the Commissioner's cross-motion for summary judgment (ECF No. 17), and the administrative record (ECF No. 10).

### A.    Background and Administrative History

Plaintiff filed the DI application at issue in this appeal in December 2015, alleging that his disability began on September 1, 2015, at the age of 43.  (ECF No. 10, PageID.182.)  In his disability report, he alleged that his "back injury/total disc replacement" limits his ability to work.  (*Id*., PageID.207.)  On June 15, 2016, the Social Security Administration (SSA) found that Plaintiff was not disabled.  (*Id*., PageID.107-126.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (ECF No. 10, PageID.128-129.)  On September 11, 2017, ALJ Patricia S. McKay held a hearing, at which Plaintiff and a vocational expert (VE), Judith Findora, testified.  (*Id*., PageID.68-105; *see also id*., ECF No. 261-263.)  On February 28, 2018, ALJ McKay issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*., PageID.53-67.)

Plaintiff submitted a request for review of the hearing decision.  (ECF No. 10, PageID.179-180.)  However, on July 16, 2018, the Appeals Council denied Plaintiff's request for review.  (*Id*., PageID.45-50.)  Plaintiff filed an appeal to this Court, and, on March 6, 2019 the matter was remanded for further proceedings.

*Hardville v. Comm'r of Soc. Sec.*, No. 18-CV-12882, 2019 WL 1057196, at *1

(E.D. Mich. Mar. 6, 2019).

On November 7, 2019, ALJ McKay held a second hearing, at which Plaintiff

and a vocational expert (VE), Elizabeth Pasikowski, testified.  (ECF No. 10,

PageID.525-546; *see also id*., ECF No. 685.)  On January 7, 2020, ALJ McKay

issued a second opinion, which determined that Plaintiff was not disabled within

the meaning of the Social Security Act.  (*Id*., PageID.505-523.)  The notice

accompanying the decision provides, *inter alia*:  (1) "[y]ou must file your written

exceptions with the Appeals Council within 30 days of the date you get this

notice[;]" (2) "[i]f you do not file written exceptions and the Appeals Council does

not review my decision on its own, my decision will become final on the 61st day

following the date of this notice[;]" and, (3) "[a]fter my decision becomes final,

you will have 60 days to file a new civil action in Federal district court."  (*Id*.,

PageID.505-506.)

It does not appear that Plaintiff sought review of the second opinion from the

Appeals Council.  (*Id*., PageID.504.)  Thus, ALJ McKay's second opinion became

final on or about Sunday, March 8, 2020.  Plaintiff timely commenced the instant

matter on March 16, 2020.

**B.**    **Plaintiff's Medical History**

The administrative record contains approximately 385 pages of medical records, which were available to the ALJ at the time of the January 7, 2020 decision.  (ECF No. 10, PageID.269-495 [Exhibits 1F-10F], & 689-846 [Exhibits 11F-14F]; *see also id.*, PageID.523.)  The administrative record also contains records dated May 1, 2018 and May 21, 2018, which document Plaintiff's left carpal tunnel release.  (ECF No. 10, PageID.497-502.)[1]

These materials will be discussed in detail, as necessary, below.

## C.  The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2015, the alleged onset date (AOD).  (ECF No. 10, PageID.510.)  At **Step 2**, the ALJ found that Plaintiff had several severe impairments (degenerative disc disease of lumbar spine with annular tear and bulging discs causing radiculopathy status post anterior lumbar fusion with instrumentation; degenerative disc disease of cervical spine causing cervical radiculopathy and ulnar neuropathy of the bilateral upper extremities status post

---

[1] It is not clear whether this information was before ALJ McKay at the time of her January 7, 2020 decision.  The Court Transcript Index does not designate these pages as an exhibit (ECF No. 10, PageID.42, 496), nor are these pages listed as an exhibit to the ALJ's January 7, 2020 decision (*id.*, PageID.522-523).  Still, Plaintiff and the Commissioner each refer to these records in their motions.  (*See* ECF No. 13, PageID.856, 862; ECF No. 17, PageID.887.)

4

ACDF at C5-6; small joint effusion of left knee; carpal tunnel syndrome (CTS) of right upper extremity (RUE) status post release).  (*Id*., PageID.510-511.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*., PageID.511.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[2] and determined that Plaintiff had the RFC "to perform sedentary work [*i.e., exertional limitations*] . . . with the following additional limitations:

- occasional climbing of stairs, crouching, crawling, kneeling, stooping/bending [*i.e., postural limitations*];

- avoid workplace hazards such as dangerous, moving machinery and unprotected heights [*i.e., environmental limitations*];

- no climbing of ladders/ropes/scaffolding [*i.e., postural limitations*];

- frequent grasping/gross manipulation and fingering/fine manipulation with nondominant left upper extremity (LUE) [*i.e., manipulative limitations*];

- occasional grasping/gross manipulation and fingering/fine manipulation with dominant RUE [*i.e., manipulative limitations*];

---

[2] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

- occasional foot controls with bilateral lower extremities [*i.e., exertional limitations*];

- occasional reaching overhead with bilateral upper extremities [*i.e., manipulative limitations*].

(*Id.*, PageID.511-516.)  At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work.  (*Id.*, PageID.516.)  At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (*Id.*, PageID.517-518.)  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from September 1, 2015, through the date of the decision.  (*Id.*, PageID.518.)

## D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence

but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting

*Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.     Analysis

Plaintiff contends that:  (1) the ALJ erred by neglecting to find his left CTS

as a severe impairment in her Step 2 analysis; (2) the ALJ failed to create an

accurate RFC assessment; and, (3) the ALJ failed to cite jobs that exist in

significant numbers that the Plaintiff could perform.  (ECF No. 13, PageID.861-

868.)  Plaintiff has the burden of proof on the first two statements of error, and the

Commissioner bears the burden on the third.  *See Walters v. Comm'r of Soc. Sec.*,

127 F.3d 525, 529 (6th Cir. 1997).

### 1.     Step 2

At Step 2, ALJ McKay determined that Plaintiff's severe impairments

included CTS of the RUE, status post-release.  (ECF No. 10, PageID.510-511.)

However, Plaintiff takes issue with the ALJ's failure to find his left CTS as a

severe impairment at Step 2.  (ECF No. 13, Page:ID.861-864.)

The SSA explains the need for a severe impairment as follows, in pertinent

part:  "If you do not have any impairment or combination of impairments which

*significantly* limits your physical or mental ability to do basic work activities, we

will find that you do not have a severe impairment and are, therefore, not disabled.

We will not consider your age, education, and work experience."  20 C.F.R. §

404.1520(c) (emphasis added).  In support of his claim that his left CTS "would significantly impact his ability to perform work activity[,]" Plaintiff points to:

- The August 16, 2017 electroneuromyography (EMG) report (ECF No. 10, PageID.491);

- Plaintiff's September 11, 2017 testimony that he has "actually dropped glasses on the floor and had a difficult time trying to get all the glass up[,]" (*id*., PageID.80);

- The May 1, 2018 diagnosis of left wrist CTS (*id*., PageID.502);

- Operative/procedure notes from the May 21, 2018 left carpal tunnel release (*id*., PageID.497-498);[3]

- The January 25, 2019 EMG report (*id*., PageID.839);

- Plaintiff's November 7, 2019 testimony that he could tolerate typing or writing for about 20 minutes before needing to take a break (*id*., PageID.534).

(ECF No. 13, PageID.862-863.)  Plaintiff correctly notes that the ALJ's written decision "fail[s] to discuss that the Plaintiff's left sided carpal tunnel syndrome required surgery in May 2018."  (ECF No. 13, PageID.856.)  As it turns out, the ALJ referenced at least the August 16, 2017 EMG report and Plaintiff's November 7, 2019 testimony, even if she did not expressly note the exact testimony about typing or writing.  (ECF No. 10, PageID.512, 514, 516.)

---

[3] As noted above, it is not clear whether this information was before ALJ McKay at the time of her January 7, 2020 decision.

More to the point, Plaintiff seems to recognize that, if there is an error at Step 2, it is harmless if it is properly considered when determining the RFC. (ECF No. 13, PageID.863-864.)  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).  Plaintiff's argument that this error is not harmless is based on the RFC's differing LUE versus RUE limitations on "grasping/gross manipulation and fingering/fine manipulation," namely that Plaintiff do so *frequently* with the *non-dominant left* but *occasionally* as to the *dominant right*.  (ECF No. 10, PageID.511.)  Plaintiff suspects that the ALJ's "reduction from 'frequent' to 'occasional' gross and fine manipulation between the left and right hand" is based on the ALJ's finding that Plaintiff's right CTS is "a severe impairment."  (ECF No. 13, PageID.863.)  If so, Plaintiff argues, the LUE should be reduced to occasional, based on "the same objective evidence and need for surgery as the right side."  (*Id*.)

Thus, the Court must consider whether substantial evidence supports the ALJ's RFC determination that Plaintiff is capable of frequent grasping and fingering with the non-dominant LUE.  (ECF No. 10, PageID.511.)  Preliminarily, I note the ALJ's discussion of CTS and fine and gross manipulation:

> Regarding the claimant's cervical spine (i.e., neck) pain, in addition to limiting lifting/carrying to no more than 10 pounds occasionally, reaching overhead is limited, as is fine and gross manipulation.
>
> As for the claimant's remaining impairments (i.e., his knee problem(s) and right carpal tunnel syndrome), the assessed residual functional

> capacity, as noted, limits standing and walking to no more than 2
> hours of an 8-hour day, and (as also noted) fine and gross
> manipulation is significantly limited. Further, use of foot controls is
> limited to a no more than occasional basis.

(ECF No. 10, PageID.513 (internal footnote omitted).)  Also, while the ALJ

acknowledged that, in April 2016, Plaintiff "began complaining of neck pain

radiating to his left upper extremity with headaches[,]" – which appears to be a

reference to Michigan Orthopaedic Institute's April 2016 notes (*id*., PageID.332,

343, 344), the ALJ also noted that, "[i]n February 2019, the claimant complained

of some carpal tunnel symptoms, though his exam was essentially normal ([ECF

No. 10, PageID.796])."  (ECF No. 10, PageID.513, 515.)

The Commissioner makes several points to support the conclusion that

Plaintiff's left CTS was not a severe impairment.  (ECF No. 17, PageID.886-887.)

Plaintiff underwent an EMG on August 16, 2017, which revealed "[m]ild, chronic,

left C6 radiculopathy[,]" (ECF No. 10, PageID.491).  On May 1, 2018, he was

diagnosed with CTS of the left wrist (ECF No. 10, PageID.500-502), and, on May

21, 2018, he underwent a left carpal tunnel release (ECF No. 10, PageID.497-498),

although, as noted above, it is not clear whether this information was before ALJ

McKay at the time of her January 7, 2020 decision.

Then, at the November 7, 2019 administrative hearing, the following

exchange took place:

> Q       All right. And at that, before the [January 2018 neck] surgery, your treatment notes were talking about how you were having pain going into your arms from your neck?
>
> A       Yes, left arm.
>
> Q       Did that alleviate that symptom after the surgery or are you still having it?
>
> A       Yeah, <u>my left arm pain is pretty much gone</u>.
>
> Q       Okay.
>
> A       Now, the day out of surgery the right hand started. It felt like somebody was just, you know, stepping on my hand and arm.
>
> Q       So the left arm was a problem before the surgery, and after it's been the other arm?
>
> A       Yeah, the right arm, the right arm started.

(ECF No. 10, PageID.533 (emphasis added).)  Subsequently, Plaintiff was asked, "You mentioned with the reaching overhead, is it just your right arm that is difficult reaching overhead?  You said the surgery your left arm?"  (*Id.*, PageID.539.)  Plaintiff responded, "Yeah, it's just pretty much my right arm, like I said, when I reach and try and grab, it just feels like somebody is taking a rubber band and just snapping it."  (*Id.*)

However, recognizing that some of this testimony relates to Plaintiff's arms rather than his wrists, the Commissioner's most persuasive argument is that "to the extent there is any error," it is "harmless."  (ECF No. 17, PageID.887-888.)

Plaintiff advocates for a conclusion that he should be equally as limited in the LUE as in the RUE. (ECF No. 13, PageID.863.) Even if this were the case, Plaintiff would still need to show that the RFC fails to accommodate frequent LUE handling and fingering. He cannot do so here, as the VE's testimony offered a job – a surveillance-system monitor – for which the job description notes that reaching, handling, fingering or feeling (*i.e.*, manipulative limitations) are not present. *See* DICOT 379.367-010 (G.P.O.), 1991 WL 673244. Thus, while Plaintiff suggests that changing his LUE limitation to occasional might erode the VE's testimony (see ECF No. 10, PageID.542-543; ECF No. 13, PageID.863-864), it would not nullify the job offered here.[4]

## 2. RFC

Plaintiff argues that the ALJ did not create an accurate RFC assessment, namely that it fails to account for his cervical spine range of motion limitations. (ECF No. 13, PageID.864-867.) Preliminarily, the ALJ found Plaintiff's "degenerative disc disease of cervical spine causing cervical radiculopathy and ulnar neuropathy of the bilateral upper extremities status post [anterior cervical

---

[4] The Commissioner offers other harmless error points – *e.g.*, the analysis proceeded past Step 2 and the RFC contains some manipulative limitations (*see* ECF No. 17, PageID.887-888) – in response to Plaintiff's harmless error argument (*see* ECF No. 13, PageID.863-864). Here, it was enough to address the argument that the surveillance-system monitor job "does not require any reaching, handing, or fingering." (ECF No. 17, PageID.888.)

discectomy and fusion] ACDF at C5-6" to be severe at Step 2.  (ECF No. 10,

PageID.510.)  Then, the ALJ concluded that Plaintiff's cervical and lumbar spine

impairments did not meet Listing 1.04.  (*Id.*, PageID.511.)  Still, within the RFC

discussion, the ALJ:

- acknowledged Plaintiff's June 20, 2016 appeals disability report, which describes the alleged change in his condition during April 2016, including, *inter alia*, an April 20, 2016 cervical spine MRI (ECF No. 10, PageID.225);

- addressed Plaintiff's cervical spine (i.e., neck) pain by assessing limitations of lifting/carrying no more than 10 pounds occasionally, occasional reaching overhead with bilateral upper extremities, frequent non-dominant LUE fine and gross manipulation, and occasional dominant RUE find and gross manipulation;

- cited Plaintiff's April 18, 2016 physical examination for its limited range of motion in the cervical spine (i.e., "arc of motion of the cervical spine is 80% limited by pain") (ECF No. 10, PageID.332, 344);

- noted Plaintiff's April 18, 2016 cervical spine MRI, which revealed "multilevel disc disease present throughout the cervical spine," with "prominent changes . . . at C3-C4 with evidence of a disc/osteophyte complex," and "left central to foraminal disc herniation . . ." at T2-T3 (*id.*, PageID.333-334);

- cited a September 29, 2016 report from the American Institute of Neurological Disorders, which reflects "mild cervical paraspinal tenderness" (*id.*, PageID.352);

- acknowledged Plaintiff's August 21, 2017 cervical spine MRI, which revealed "[m]ultilevel spondylotic changes as described above greatest at C5-C6 with focal disc protrusion abutting and

flattening the ventral cord without cord signal changes[,]" (*id.*, PageID.486-487);

- noted "objective studies [that] document mild cases of cervical radiculopathy and ulnar neuropathy[,]" for which the ALJ appears to cite the April 20, 2016 cervical spine MRI (*id.*, PageID.346-347), an August 16, 2017 EMG (*id.*, PageID.489-491) and an August 21, 2017 cervical spine MRI (*id.*, PageID.486-487); and,

- referenced September 14, 2017 progress notes as evidence of "discomfort on cervical range of motion testing[,]" *i.e.*, "[n]eck flexion to 20 (limited by pain in LUE), extension to 10 (limited by pain in LUE), rotation to 20 (limited by pain in LUE)[,]" (*id.*, PageID.751).

(ECF No. 10, PageID.512-515; *see also id.*, PageID.511.)

Still, Plaintiff contends that the ALJ "does not account for limitations in [his] ability to hold his head in a static position, turn side to side, or look up or down." (ECF No. 13, PageID.866.) Yet, Plaintiff's support for this argument is:

- his September 11, 2017 testimony that his neck is "affecting me to the point where I . . . really had to stop driving because that blind spot checking some I've, I've had it when I turned and try to look over the left or right it'll just be a[n] intense electrical type sensation that'll just shoot down, you know, that more cases on my left side[,]" (ECF No. 10, PageID.79);

- Plaintiff's April 2016 function report, on which Plaintiff reported that his hobbies and interests include watching television and reading, and he tries to do them daily; however, his reading has been limited due to soreness/pain in the neck (ECF No. 10, PageID.238); and,

- his November 7, 2019 testimony that he could tolerate typing or writing for about 20 minutes before he would need to take a break (ECF No. 10, PageID.534).

(ECF No. 13, PageID.866.)  The ALJ represented that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (ECF No. 10, PageID.511.) Although she found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" she also found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id*., PageID.513.)

Plaintiff's argument is unavailing.  First, to the extent he relies upon his own representations, Plaintiff has not challenged the ALJ's somewhat negative subjective symptoms determination.  (ECF No. 10, PageID.513.)  Second, to the extent Plaintiff challenges his ability to perform the work of a surveillance-system monitor due to his neck impairment(s) (ECF No. 13, PageID.866), the job description notes that climbing, balancing, stooping, kneeling, crouching, and crawling (*i.e.*, postural limitations) are not present; neither are reaching, handling, fingering or feeling (*i.e.*, manipulative limitations).  *See* DICOT 379.367-010

(G.P.O.), 1991 WL 673244.  Nor does the job – for which the only environmental limitation seems to be noise level – appear to require driving, a task that necessarily involves checking the blind spot, which is allegedly aggravated by his neck impairment.  Finally, while Plaintiff contends that "[t]he ALJ did not pose any questions to the VE about the requirements for neck positions in this surveillance job[,]" (ECF No .13, PageID.866), even if this is true, Plaintiff's counsel was afforded the opportunity to examine the VE but declined to do so. (ECF No. 10, PageID.545-546.)  *O'Neal v. Comm'r of Soc. Sec.*, 799 F. App'x 313, 318 (6th Cir. 2020) ("Because the DOT continues to be recognized as a source of reliable job information and O'Neal did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that O'Neal was able to perform work that existed in significant numbers in the national economy.").  Not having shown that the ALJ's RFC fails to accommodate his cervical spine range of motion limitations, the ALJ's RFC determination should be affirmed.

### 3.    Step 5

Finally, Plaintiff argues that the ALJ failed to cite jobs that exist in significant numbers that he could perform.  (ECF No. 13, PageID.867-868.)  At the November 7, 2019 administrative hearing, the VE testified that a hypothetical person with an RFC like the one eventually adopted in Plaintiff's case could

perform the work of a surveillance-system monitor. *See* DICOT 379.367-010

(G.P.O.), 1991 WL 673244. (ECF No. 10, PageID.541-544.) The VE testified that

there are 63,000 such jobs nationally. (*Id*., PageID.543.) ALJ relied upon this

testimony when she concluded at Step 5 that there were jobs that existed in

significant numbers in the national economy that Plaintiff could perform. (*Id*.,

PageID.517.)

The social security regulations provide that "[a]ny other work (jobs) that you

can adjust to must exist in significant numbers in the national economy (either in

the region where you live or in several regions in the country)." 20 C.F.R. §

404.1560(c)(1). The Commissioner bears the burden on this issue. *See Walters*,

127 F.3d at 529; 20 C.F.R. § 404.1560(c)(2) ("In order to support a finding that

you are not disabled at this fifth step of the sequential evaluation process, we are

responsible for providing evidence that demonstrates that other work exists in

significant numbers in the national economy that you can do, given your residual

functional capacity and vocational factors.").

Plaintiff correctly points out that "[i]solated jobs that exist only in very

limited numbers in relatively few locations outside of the region where you live are

not considered 'work which exists in the national economy'." 20 C.F.R. §

404.1566(b). "In determining whether the jobs identified are limited and isolated,

the factors to be considered include the level of claimant's disability; the reliability

of the vocational expert's testimony; the reliability of the claimant's testimony; the distance the claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; the types and availability of such work and so on." *Harmon v. Apfel*, 168 F.3d 289, 292 (6th Cir. 1999) (citations omitted).

However, Plaintiff's Step 5 argument is unavailing.  First, to the extent, if at all, Plaintiff challenges the sufficiency of 63,000 jobs existing nationally, it is sufficient.  *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("Six thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'").  Second, Plaintiff's argument that the ALJ did not take the *Harmon* factors into consideration points to his testimony that he is "unable to drive."  (ECF No. 13, PageID.868.)[5]  However, Plaintiff's counsel could have asked the VE about "the distance these jobs were from the Plaintiff" or "if the jobs exist only in isolated pockets in the nation."  (*Id*.)  Plaintiff's counsel was afforded the opportunity to examine the VE but declined to do so.  (ECF No. 10,

---

[5] The Court notes that:  (a) in his March 2016 function report, Plaintiff represented that he does not drive, because he finds it "painful to twist and to make [illegible] head movements[,]" (ECF No. 10, PageID.219); (b) in what appears to be an April or June 2016 function report, Plaintiff represented that he drives (*id*., PageID.237); (c) at the September 11, 2017 administrative hearing, Plaintiff testified that he "had to stop driving because that blind spot checking that some I've, I've had it when I turned and try to look over the left or right it'll just be a[n] intense electrical type sensation that'll just shoot down, you know, that more cases on my left side[,]" (ECF No. 10, PageID.79); and, (d) at the November 7, 2019 administrative hearing, Plaintiff testified that he does not drive (ECF No. 10, PageID.538).

PageID.545-546.)  *O'Neal*, 799 F. App'x at 318.  Third, to the extent Plaintiff cites the SSA's Program Operations Manual System (POMS) for its directive to "[c]ite three occupations that are examples of work the claimant could do given his or her impairment-related limitations and restrictions[,]" it also provides that "[y]ou may cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupation(s)."  *See* POMS DI 25025.030 (https://secure.ssa.gov/poms.nsf/lnx/0425025030).  Here they do.

### F.    Conclusion

In sum, Plaintiff has not satisfied his burden to overturn the ALJ's conclusions at Step 2 or within the RFC assessment, and the Commissioner has satisfied her burden of proof as to the ALJ's Step 5 determination.  *Walters,* 127 F.3d at 529.  Accordingly, as detailed in the foregoing discussion, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment or remand (ECF No. 13), **GRANT** Defendant's cross-motion for summary judgment (ECF No. 17), and **AFFIRM** the Commissioner's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days after being served with a copy, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after being served with a copy of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:   August 16, 2021

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE